ELIZABETH LOEB
SARA COANGELO WYCHE
Environment & Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7166
Washington, D.C. 20044
(202) 616-8916 (t)
(202) 514-4180 (f)
Elizabeth.Loeb@usdoj.gov

Attorneys for Plaintiff United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

————————————————————————
                                                     )
UNITED STATES OF AMERICA                             )
                                                     )
                                    Plaintiff,       )          Case No.
                                                     )
                         v.                          )          COMPLAINT FOR CIVIL PENALTIES
                                                     )          AND INJUNCTIVE RELIEF
CITY OF UNALASKA, ALASKA and                         )
                                                     )
THE STATE OF ALASKA,                                 )
                                                     )
                                    Defendants.      )
————————————————————————                             )

        The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator of the United

States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

                                        **NATURE OF ACTION**

        1.        This is a civil action instituted against the City of Unalaska ("City") for civil

penalties and injunctive relief pursuant to Section 309(b) and (d) of the Federal Water Pollution

Control Act of 1972, as amended (the "Clean Water Act" or the "CWA"), 33 U.S.C.

§ 1319(b)&(d), for the City's illegal discharges of pollutants in violation of Section 301(a) of the

CWA, 33 U.S.C. § 1311(a).  The claims against the City arise from violations of permit effluent

limitations and conditions set forth in a National Pollutant Discharge Elimination System

("NPDES") permit issued to the City under Section 402 of the Clean Water Act, 33 U.S.C.

§ 1342.

## PARTIES

2.      Plaintiff is the United States of America.  Authority to bring this action is vested

in the Attorney General of the United States by Section 506 of the Clean Water Act, 33 U.S.C.

§ 1366, and by 28 U.S.C. §§ 516 and 519.

3.      Defendant City of Unalaska is a municipality organized under the laws of the

State of Alaska and thus is a "person" within the meaning of Section 502(5) of the Clean Water

Act, 33 U.S.C. § 1362(5), and a "municipality" within the meaning of Section 502(4) of the

CWA, 33 U.S.C. § 1362(4).

4.      Defendant State of Alaska is a "person" within the meaning of Section 502(5) of

the CWA, 33 U.S.C. § 1362(5).

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

and 1345 because this is a civil action commenced by the United States that arises under the laws

of the United States and pursuant to 28 U.S.C. § 1355 because this is an action in part for the

recovery of a penalty incurred under an act of Congress.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and Section

309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because the events or omissions giving rise

to the claims herein occurred in this district.  Venue is also proper in this district pursuant to 28 U.S.C. § 1395(a).

7.      Notice of the commencement of this action has been given to the State of Alaska pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

## STATUTORY BACKGROUND

8.      Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" except in compliance with an NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

9.      Section 502(12) of the Clean Water Act, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

10.     Section 502(6) of the Clean Water Act, 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, sewage, chemical wastes, and industrial waste.

11.     Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7), defines "navigable waters" to mean "the waters of the United States, including the territorial seas."

12.     Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14), defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch … [or] conduit … from which pollutants are or may be discharged."

13.     Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), defines "person" to include a municipality of a State, and, in turn, "municipality" is defined to include a city.  See also 33 U.S.C. § 1362(4).

14.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), establishes the NPDES permit system, and authorizes the EPA to issue permits for the discharge of pollutants, but only in

compliance with Section 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as the EPA determines are necessary to carry out the provisions of the CWA.

15. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), subjects any person who violates, *inter alia*, Section 301 of the CWA, or "any permit condition or limitation" implementing Section 301 of the CWA in a permit issued under Section 402 of the CWA, to civil penalties. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), the Debt Collection Improvement Act of 1996, 28 U.S.C.A. § 2461 note, and 40 C.F.R. Part 19, civil penalties may be assessed in an amount not to exceed $32,500 per day per violation for each such violation that occurred after March 15, 2004 but before January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

16. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which it has the authority to issue a compliance order under Section 309(a). Section 309(a)(3) authorizes EPA to issue compliance orders whenever it finds that any person has violated Section 301 of the CWA or any condition or limitation implementing such Section in a permit issued pursuant to Section 402 of the CWA. 33 U.S.C. § 1342 (a)(3).

## FACTUAL ALLEGATIONS UNDERLYING CLAIMS FOR RELIEF

17. The City owns and operates a publicly owned treatment works (the "Facility") which consists of wastewater collection, transmission, and treatment systems located in Unalaska, Alaska.

18. The City's Facility is a "treatment works" as defined by Section 212(2)(A) and (B) of the CWA, 33 U.S.C. § 1292(2)(A) and (B), and a "publicly owned treatment works" as

defined by the federal regulations implementing the CWA at 40 C.F.R. §122.2 (cross-referencing the definition at 40 C.F.R. § 403.3(q)).

19.     The City's Facility includes point sources within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

20.     The Facility discharges pollutants from Outfall 001, which is located at latitude 53° 53' 01" North, 166° 33' 01" West.  Outfall 001 is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

21.     At all relevant times, the City has "discharged pollutants" including sewage from its Facility within the meaning of Sections 502(6) and (12) of the CWA, 33 U.S.C. §§ 1362(6) and (12), into South Unalaska Bay, which is part of the Pacific Ocean.

22.     South Unalaska Bay is a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7), and is a "water of the United States" within the meaning of 40 C.F.R. § 122.2.

23.     Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, EPA issued the City a NPDES permit for its Facility, Permit Number AK004345-1, which became effective on February 1, 2004, and although originally set to expire on February 1, 2009, was administratively extended in accordance with federal regulations, 40 C.F.R. § 122.6.

24.     Part I.A. of the Permit establishes effluent limits for the discharge from Outfall 001.  These effluent limits include, but are not limited to, fecal coliform, total aqueous hydrocarbons, total aromatic hydrocarbons, flow, biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), and total residual chlorine.

25.     Part II.B of the Permit requires the City to summarize monitoring results for the Facility each month in a Discharge Monitoring Report ("DMR").

26.     When a permittee exceeds a monthly average effluent limit, the permittee is deemed to be in violation of the effluent limit each of the days of the month in which the violation occurred.  When a permittee exceeds a weekly average effluent limit, the exceedance is counted as seven violations.  When a permittee exceeds a daily maximum effluent limit, the exceedance is counted as one violation.

27.     Section I.A. of the Permit contains a monthly average concentration effluent limit for fecal coliform in discharges from the Facility of 10,000 colonies/100 ml.  Between October 2004 and October 2010, the City violated the monthly average concentration effluent limit for fecal coliform during sixteen (16) months, constituting 479 violations, at least 160 of which exceeded 20,000 colonies/100 ml or were over double the permit limit.

28.     Section I.A. of the Permit contains a daily maximum concentration effluent limit for fecal coliform in discharges from the Facility of 15,000 colonies/ 100 ml.  Between October 2004 and October 2010, the City violated the daily maximum effluent limit for fecal coliform a total of 65 days, constituting 65 violations.  On at least 49 of these days the City's daily maximum fecal coliform discharge was greater than three times the permit limit and on at least 19 days the discharge exceeded 100,000 colonies/ 100 ml.

29.     Section I.A. of the Permit contains a daily maximum concentration effluent limit for total aqueous hydrocarbons in discharges from the Facility of 15 µg/L.  Between October 2004 and October 2010, the City violated the daily maximum concentration effluent limit for total aqueous hydrocarbons a total of three (3) days, constituting three (3) violations.

30.     Section I.A. of the Permit contains a daily maximum concentration effluent limit for total aromatic hydrocarbons in discharges from the Facility of 10 µg/L.  Between October

2004 and October 2010, the City violated the daily maximum concentration effluent limit for total aromatic hydrocarbons a total of twelve (12) days, constituting twelve (12) violations.

31.     Section I.A. of the Permit contains an average monthly flow limit for discharges from the Facility of 0.6 million gallons per day (mgd).  Between October 2004 and October 2010, the City violated the average monthly flow limit a total of eight (8) months, constituting 239 violations.

32.     Section I.A. of the Permit contains a daily maximum flow limit for discharges from the Facility of 0.9 mgd.  Between October 2004 and October 2010, the City violated the daily maximum flow limit a total of 22 days, constituting 22 violations.

33.     Section I.A. of the Permit contains a monthly average concentration effluent limit for total residual chlorine in discharges from the Facility of 0.17 mg/L.  Between October 2004 and October 2010, the City violated the monthly average concentration effluent limit for total residual chlorine a total of six (6) months, constituting 184 violations.

34.     Section I.A. of the Permit contains a daily maximum concentration effluent limit for total residual chlorine in discharges from the Facility of 0.34 mg/L.  Between October 2004 and October 2010, the City violated the daily maximum concentration effluent limit for total residual chlorine a total of ten (10) days, constituting ten (10) violations.

35.     Section I.A. of the Permit contains a final average monthly concentration effluent limit for BOD in discharges from the Facility of 140 mg/L.  Between February 2008 and October 2010, the City violated the average monthly concentration effluent limit for BOD a total of thirty (30) months, constituting 915 violations.

36.     Section I.A. of the Permit contains a final average monthly mass effluent limit for BOD in discharges from the Facility of 700 lbs/day.  Between February 2008 and October 2010,

the City violated the average monthly mass effluent limit for BOD a total of twenty-three (23) months, constituting 699 violations.

37.     Section I.B. of the Permit contains an interim daily maximum concentration effluent limit for BOD in discharges from the Facility of 468 mg/L.  Between October 2004 and February of 2008, the City violated the interim daily maximum concentration effluent limit for BOD a total of three (3) days, constituting three (3) violations.

38.     Section I.B. of the Permit contains an interim daily maximum mass effluent limit for BOD in discharges from the Facility of 2,343 lbs/day.  Between October 2004 and February 2008, the City violated the interim daily maximum mass effluent limit for BOD a total of two (2) days, constituting two (2) violations.

39.     Section I.A. of the Permit contains a final daily maximum concentration effluent limit for BOD in discharges from the Facility of 200 mg/L.  Between February 2008 and October 2010, the City violated the final daily maximum concentration effluent limit for BOD a total of nineteen (19) days, constituting nineteen (19) violations.

40.     Section I.A. of the Permit contains a final average monthly concentration effluent limit for TSS in discharges from the Facility of 140 mg/L.  Between February 2008 and October 2010, the City violated the average monthly concentration effluent limit for TSS a total of six (6) months, constituting 182 violations.

41.     Section I.A. of the Permit contains a final average monthly mass effluent limit for TSS in discharges from the Facility of 700 lbs/day.  The City violated the average monthly mass effluent limit for TSS in February 2009, constituting 28 violations.

42.     Section I.A. of the Permit contains a monthly average removal requirement for BOD in discharges from the Facility that requires the City to remove an average of at least 30

percent of BOD from its influent.  Between October 2004 and October 2010, the City violated the monthly average removal requirement for BOD a total of thirty-three (33) months, constituting 1004 violations.

43.     Section I.A. of the Permit contains a monthly average removal requirement for TSS in discharges from the Facility that requires the City to remove an average of at least 30% of TSS from its influent.  Between October 2004 and October 2010, the City violated the monthly average removal requirement for TSS a total of thirty-three (33) months, constituting 1004 violations.

44.     As set forth above, the City's DMRs from October 2004 through October 2010 indicate that the Facility had at least 4870 violations of the effluent limits set forth in the Permit.

45.     Section I.A. of the Permit requires the City to sample the discharge from the Facility for fecal coliform.  The City failed to properly sample the Facility's discharge for fecal coliform in June 2007, July 2007 and twice in August 2007, constituting four (4) violations.

46.     Upon reasonable opportunity for further investigation and discovery, evidence will show that the City has continued to violate the Permit since October 2010.

47.     Each of the foregoing discharges by the City violated the terms and conditions of its NPDES Permit, including the General Effluent Limitations in Part I of the NPDES Permit, which in turn violated Section 301 of the CWA, 33 U.S.C. 1311.

## CLAIMS FOR RELIEF

### COUNT I

### Claim for Penalties under Section 309(d) of the Clean Water Act

48.     Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

49.     Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Federal Civil Penalties Inflation Adjustment Act, as amended, 28 U.S.C. § 2461, and 40 C.F.R. Part 19, the City is liable for a civil penalty not to exceed $32,500 per day for each violation of the CWA that occurred after March 15, 2004 but before January 12, 2009, and $37,500 per day for each violation that occurred after January 12, 2009.

## COUNT II

### Claim for Injunctive Relief under Section 309(b) of the Clean Water Act

50.     Paragraphs 1 through 47 are re-alleged and incorporated herein by reference.

51.     The City violated and, unless enjoined by the Court, will continue to violate Section 301 of the CWA, 33 U.S.C. 1311.

52.     Pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), the United States is entitled to injunctive relief against the City restraining further violations of, and requiring compliance with, the CWA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America, prays that this Court:

A.     Order Defendant to pay a civil penalty of up to $32,500 per day for each violation of the CWA which occurred between March 15, 2004 and January 12, 2009, and not to exceed $37,500 per day for each violation that occurred on or after January 12, 2009;

B.     Issue a Preliminary Injunction enjoining the City from any and all ongoing and future violations of the CWA and Order the City to undertake expeditiously all measures necessary to comply with the Clean Water Act and its NPDES permit including any necessary structural and operational changes to the Facility; and

C.     Grant such other relief as may be just and proper and as the public interest and the

equities of the case may require.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources
Division

/s/ Elizabeth  L. Loeb
Elizabeth L. Loeb
Sara Colangelo Wyche
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 616-8916
Elizabeth.Loeb@usdoj.gov

KAREN L. LOEFFLER
United States Attorney
District of Alaska

/s/ Kevin Feldis
Kevin Feldis
Office of the United States Attorney
District of Alaska
222 West 7th Ave, Rm 253,
Anchorage, Alaska  99513
(907) 271-5071
Kevin.Feldis@usdoj.gov