IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-CV-00133-HRH |
| v. | ) | |
| | ) | |
| CITY OF UNALASKA, ALASKA and | ) | |
| THE STATE OF ALASKA, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO ENTER CONSENT DECREE**

The United States of America moves the Court to enter the proposed Consent Decree that was lodged in this case on May 10, 2012 (Docket No. 48). The United States published notice of this Consent Decree in the Federal Register on May 16, 2012 (77 Fed. Reg. 28897) and solicited public comments thereon for a period of thirty days. No comments were received. As discussed below, the Consent Decree is fair, reasonable, and in the public interest. Therefore, the United States respectfully requests that the Court now sign (at page 33) and enter the Consent Decree as a final order of the Court.

I.  BACKGROUND

   A.  **Brief Factual History**

The proposed Consent Decree resolves Clean Water Act claims filed by the United States in June 2011 against the City of Unalaska ("the City") and State of Alaska. The City, located in the Aleutian Islands, includes the Port of Dutch Harbor, which is the largest fishing port in the United States in volume of commercial fish landed. The Unalaska wastewater treatment plant ("WWTP") currently provides primary treatment by screening out solids followed by

1

disinfection using ultraviolet radiation.  The WWTP discharges pollutants into South Unalaska Bay, which provides habitat for several threatened and endangered species, including the Steller sea lion, humpback whale, fin whale, sperm whale, northern sea otter, Steller's eider, and short-tailed albatross.  The Complaint alleges that the City's WWTP has continuously violated its National Pollution Discharge Elimination System Permit ("NPDES Permit"), specifically its limits for fecal coliform, flow, hydrocarbons, biochemical oxygen demand ("BOD") and Total Suspended Solids ("TSS").

  **B.** **Terms of Proposed Consent Decree**

The proposed Consent Decree requires the City to construct and operate four construction projects at a cost of approximately $23 million.  These projects, which include a WWTP upgrade to chemically enhanced primary treatment ("CEPT"), are designed to enable the City to comply with its effluent limits in the current NPDES Permit.  First, by December 31, 2012, the City will replace at least one of its fixed-speed pumps with a variable-speed pump.  *See* proposed Consent Decree ¶ 10 and Appendix A.  By replacing at least one fixed-speed pump with a variable-speed pump, the City will be able to slow the pace of the wastewater influent into the UV system during low flow periods, and thereby increase UV disinfection exposure time and the fecal coliform kill rate.  This is strictly an interim measure intended to mitigate the fecal coliform exceedances while the more permanent and extensive measures described below are being implemented.

Second, by December 31, 2013, the City will construct a permanent storage tank into which landfill leachate will be pumped and aerated before being pumped to the WWTP.  *See* proposed Consent Decree ¶ 11 and Appendix B.  The City's landfill contributes leachate to the WWTP collection system and is a source of BOD loading to the WWTP.  In addition, suspended

2

solids in the leachate interfere with the effective operation of the UV fecal coliform disinfection system. The tank will reduce BOD loading to the WWTP through aeration and by slowing down the leachate flow from the landfill. It will also reduce suspended solids, which will increase the efficacy of the UV disinfection system.

Third, by December 31, 2014, the City will build and operate a chlorination/dechlorination system as the primary disinfection method for fecal coliform. *See* proposed Consent Decree ¶ 12 and Appendix C. This system involves building large tanks into which the effluent will be pumped. In the tanks, the wastewater effluent will first be exposed to chlorine to kill the fecal coliform and later to chemicals to remove the chlorine so that the City will not discharge chlorine to the Bay. Once operational, this system should enable the City to reduce fecal coliform levels in the effluent to levels far lower than the applicable NPDES Permit limit (further explained below).

Finally, by December 31, 2015, the City will build and operate a CEPT system. *See* proposed Consent Decree ¶ 13 and Appendix D. This system uses chemicals to enhance the settling process employed by the City's primary treatment system. The capital costs of the CEPT system are likely to exceed $16 million.

In addition to the above-described construction projects, the Consent Decree also requires that the City adhere to limits for its fecal coliform discharges that are more stringent than NPDES permit limits. For all other pollutants, discharges in excess of NPDES Permit limits are also prohibited by the Consent Decree and subject to stipulated penalties. The City also will pay a $340,000 civil penalty for its past violations.

3

II.   **STANDARD OF REVIEW**

The standard of review of the proposed Consent Decree is whether the settlement is fair and reasonable, and resolves the controversy in a manner consistent with the public interest. *United States v. Oregon,* 913 F.2d 576, 580 (9th Cir. 1990); *Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117, 1126 (D.C. Cir. 1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984); *United States v. Telluride Co.,* 849 F. Supp. 1400, 1402 (D. Colo. 1994). Approval of a settlement is committed to the informed discretion of the trial court. *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984); *Bragg v. Robertson,* 83 F. Supp. 2d 713, 717 (S.D. W.Va. 2000), *aff'd*, 248 F.3d 275 (4th Cir. 2001); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986).

In examining a proposed consent decree, the district court "should be guided by the general principle that settlements are to be encouraged." *Am. Canoe Ass'n v. E.P.A.*, 54 F. Supp. 2d 621, 625 (E.D. Va. 1999) (quoting *United States v. North Carolina,* 180 F.3d 574, 581 (4th Cir. 1999)); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) (Settlements conserve the resources of the courts, the litigants, and the taxpayers and "should . . . be upheld whenever equitable and policy considerations so permit.").

> Voluntary settlement of civil controversies is in high judicial favor . . . . When the effort [to settle] is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it.

*Pennwalt Corp. v. Plough, Inc.* 676 F.2d 77, 80 (3d Cir. 1982).

The policy favoring settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of [EPA]." *United States v. Cannons Eng'g Corp*., 720 F. Supp. 1027, 1035 (D. Mass. 1989), *aff'd*, 899 F.2d 79 (1st Cir. 1990); *S.E.C. v.*

4

*Randolph,* 736 F.2d 525, 529 (9th Cir. 1984) ("courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment"); *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981) (balancing of competing interests affected by a proposed consent decree to which the United States is a party "must be left, in the first instance, to the discretion of the Attorney General."); *United States v. Akzo Coatings of America, Inc.,* 949 F.2d 1409, 1436 (6th Cir. 1991) ("presumption in favor of voluntary settlement ... is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field"); *see also United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746 (9th Cir. 1995) ("a district court reviewing a proposed consent decree 'must refrain from second-guessing the Executive Branch.'"); *United States v. Montgomery,* Case No. 2:05-CV-131, 2007 U.S. Dist. LEXIS 44980, *3, (W.D. Mich. June 21, 2007), quoting *Kelley v. Thomas Solvent Co.,* 790 F. Supp. 731, 735 (W.D. Mich. 1991) ("There is perhaps a presumption of enforceability when the governmental agencies charged with enforcing the environmental statutes worked toward and approve of the consent decree."); *United States v. Rohm & Haas Co.,* 721 F. Supp. 666, 681 (D.N.J. 1989) (presumption of validity attaches to settlement negotiated by federal agency charged with its enforcement); *E.P.A. v. City of Green Forest*, 921 F.2d 1394, 1402 (8th Cir. 1990) (discretion given to EPA in enforcement of the Clean Water Act carries over to discretion in fashioning settlement).

"A consent decree is essentially a settlement agreement subject to continued judicial policing. It is not a decision on the merits . . . , but is the product of negotiation and compromise." *Oregon,* 913 F.2d at 580 (citations and internal quotations omitted). Accordingly, in reviewing a consent decree, a court should not "substitute [its] own judgment as

5

to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Bd. of Sch. Dir. of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Nor should it inquire "whether the settlement is one which the court itself might have fashioned, or considers as ideal . . . ." *Cannons*, 899 F.2d at 84, or seek to determine whether the proposed settlement provides for "every benefit that might someday be obtained in contested litigation." *United States v. Allegheny Ludlum Indus., Inc.* 517 F.2d 826, 850 (5th Cir. 1975).

Finally, a court is not authorized to rewrite or modify the parties' agreement; it must consider and approve or reject as a whole the proposal as submitted by the parties. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982); *Brooks v. Georgia State Bd. of Elections*, 59 F.3d 1114, 1119-20 (11th Cir. 1995); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348 (6th Cir. 1986); *Williams v. City of New Orleans*. 694 F.2d 987, 993 (5th Cir. 1982).

### III.  ARGUMENT

The Court should approve the proposed Consent Decree because it is fair, reasonable and furthers the public interest. First, the settlement is the result of good faith and hard, arms-length bargaining between the parties, following initial litigation in 2011. During more than two years of negotiations, the United States, the City of Unalaska, and the State of Alaska were represented by sophisticated environmental counsel. The ultimate settlement was reached through court-ordered mediation with the assistance of a highly experienced third-party neutral who administered the settlement process. The parties participated in multiple in-person meetings, mediation sessions, and innumerable conference calls. These negotiations involved extensive sharing of detailed technical and financial information and numerous exchanges of technical

6

documents and draft consent decrees, resulting in mutually acceptable final documents. Those robust (and sometimes contentious) negotiations provide ample support for the good faith efforts of the parties.

Second, the terms of the proposed Consent Decree are reasonable. As discussed above in Section I.B., the injunctive relief in the form of the four construction projects is designed to enable the City to cease the specific violations of its NPDES Permit alleged in the Complaint. The implementation schedule strikes a balance between the need to remedy the City's ongoing violations expeditiously, potential impacts on the City's ratepayers and financial resources, and various technical and logistical challenges posed by the City's remote location in the Aleutian Islands.

Moreover, the proposed Consent Decree is in the public interest and "comports with the goals of Congress." *See Sierra Club v. Coca–Cola Corp.,* 673 F. Supp. 1555, 1556 (M.D. Fla. 1987). The overarching goal of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). This Decree furthers these goals by addressing the City's NPDES Permit violations and protecting water quality in South Unalaska Bay where the City discharges. The stipulated penalties for violations of the Consent Decree will also encourage the City to comply with its terms. Further, by requiring payment of a substantial penalty that is commensurate with the violations alleged, this settlement deters future violations by the City and other similarly situated public utilities. Finally, by efficiently resolving the claims and defenses before the Court, the settlement will conserve public resources of the United States, State of Alaska, and City of Unalaska that would otherwise be spent on litigating the claims in this case.

## CONCLUSION

For the reasons above, the United States respectfully requests this Court to enter the proposed Consent Decree. The City of Unalaska and the State of Alaska have signed and approved the Consent Decree and have consented to its entry without further notice. *See* proposed Consent Decree ¶ 81. No proposed order is attached because there is a signature block for the Court to execute on page 33 of the proposed Consent Decree lodged with the Court (Docket No. 48-1).

Respectfully Submitted,

IGANACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

/s/ Sara A. Colangelo
ELIZABETH LOEB
SARA A. COLANGELO
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 514-3394
sara.colangelo@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 22, 2012, an electronic copy of the foregoing Motion to Enter Consent Decree was provided by the ECF filing system and via email to the individuals who represent the Defendants.

/s/ Sara A. Colangelo
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 514-3394
sara.colangelo@usdoj.gov