UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>CITY OF UNALASKA, ALASKA, )<br>)<br>THE STATE OF ALASKA )<br>)<br>Defendants. )<br>) | Civ. A. No. 3:11-cv-00133-HRH |

**CONSENT DECREE**

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ................................................................................................ 2

II. APPLICABILITY ................................................................................................................. 2

III. OBJECTIVE ........................................................................................................................ 3

IV. DEFINITIONS ..................................................................................................................... 3

V. CIVIL PENALTY ................................................................................................................. 6

VI. COMPLIANCE REQUIREMENTS ...................................................................................... 6

VII. REPORTING REQUIREMENTS ........................................................................................ 10

VIII. STIPULATED PENALTIES ............................................................................................... 12

IX. FORCE MAJEURE ............................................................................................................. 19

X. DISPUTE RESOLUTION .................................................................................................... 21

XI. INFORMATION COLLECTION AND RETENTION ......................................................... 23

XII. EFFECT OF SETTLEMENT .............................................................................................. 25

XIII. COSTS ................................................................................................................................ 27

XIV. NOTICES ............................................................................................................................ 28

XV. EFFECTIVE DATE ............................................................................................................. 29

XVI. RETENTION OF JURISDICTION ..................................................................................... 30

XVII. MODIFICATION ................................................................................................................ 30

XVIII. TERMINATION .................................................................................................................. 30

XIX. PUBLIC PARTICIPATION ................................................................................................ 31

XX. SIGNATORIES/SERVICE ................................................................................................. 31

XXI. INTEGRATION .................................................................................................................. 32

XXII. APPENDICES .................................................................................................................. - 32 -

XXIII. FINAL JUDGMENT .......................................................................................................... 32

United States v. City of Unalaska Consent Decree

APPENDICES

Appendix A: Influent Pump Station Improvements

Appendix B: Landfill Leachate Tank

Appendix C: Chlorination/Dechlorination System

Appendix D: Chemically Enhanced Primary Treatment System

Appendix E: Interim Effluent Limits

WHEREAS Defendant, the City of Unalaska, Alaska ("the City") owns and operates a publicly owned treatment works ("POTW" or "the Facility") currently located at 19 Gilman Road, in Unalaska, Alaska, that collects, pumps, treats, and disposes of sanitary sewage and other pollutants into South Unalaska Bay, part of the Bering Sea.

WHEREAS on December 15, 2003, EPA issued the City a National Pollution Discharge Elimination System ("NPDES") Permit (No. AK-004345-1) under Section 402 of the CWA, 33 U.S.C. § 1342, that authorized the City to discharge specified concentrations and amounts of certain pollutants from the POTW. The City's Permit became effective on February 1, 2004; however, the City disputes the validity of certain permit terms the enforcement of which is resolved under this Consent Decree.

WHEREAS Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action alleging that the City is liable for civil penalties and injunctive relief pursuant to Section 309(b) and (d) of the Federal Water Pollution Control Act of 1972, as amended (the "Clean Water Act" or the "CWA"), 33 U.S.C. § 1319(b)&(d), for the POTW's discharges of pollutants in violation of its NPDES Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

WHEREAS the United States' Complaint also names the State of Alaska as a defendant pursuant to Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e).

WHEREAS the City of Unalaska does not admit any liability for the violations alleged in the Complaint.

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties and without adjudication of any issue of fact or law except as expressly provided herein, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over the Parties. Venue lies in this District pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395(a), because the City is located in this judicial district. For purposes of this Decree, or any action to enforce this Decree, the City consents to the Court's jurisdiction over this Decree and any such action and over the City and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, the City agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, the State, and the City and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the City of its obligation to ensure

that the terms of the Consent Decree are implemented. At least thirty (30) Days prior to any transfer of ownership or operation of the Facility, the City shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed transfer agreement, to the United States, in accordance with Section XIV. Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

5.      The City shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. The City shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, the City shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. OBJECTIVES

7.      It is the goal of the Parties and this Consent Decree for the City to construct and operate various wastewater treatment-related projects that will enable the Facility to comply with its current NPDES Permit, issued on December 15, 2003, as well as the Final Fecal Coliform and Percent Removal Limits set forth in this Consent Decree for the term of this Consent Decree.

### IV. DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth

below are used in this Consent Decree, the following definitions shall apply:

a.      "ADEC" shall mean the Alaska Department of Environmental Conservation and any components thereof or successor agencies and departments.

b.      "CWA" and "Clean Water Act" shall mean the Federal Water Pollution Control Act of 1972, as amended, 33 U.S.C. §§ 1251-1387.

c.      "Complaint" shall mean the complaint filed by the United States in this action.

d.      "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto.

e.      "Date of Lodging" shall mean the day that the Consent Decree is lodged with the Court for public comment as provided by Section XIX.

f.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

g.      "The City" shall mean the City of Unalaska, Alaska.

h.      "Deliverable" shall mean any written report or other document or item required to be prepared and/or submitted pursuant to this Consent Decree.

i.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j.      "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket, pursuant to Section XV.

k.     "Facility" shall mean the City's publicly owned treatment works, currently located at 19 Gilman Road, Unalaska, Alaska, all associated collection, holding, transporting and treatment and discharge systems, including that portion of the City's landfill downstream from the lined landfill cells that collects, holds, and transports leachate from the City landfill to the POTW, and all appurtenances, additions, improvements or replacements thereto.

l.     "NPDES Permit" shall mean the National Pollution Discharge Elimination System Permit, Permit No. AK-004345, issued to the City by EPA on December 15, 2003.

m.     "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

n.     "Parties" shall mean the United States, the State, and the City.

o.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

p.     "State" shall mean the State of Alaska.

q.     "Substantial Completion" of a construction project shall mean that (i) all equipment testing has been satisfactorily performed under normal operating range; (ii) personnel have been trained in proper operation of the project; (iii) the construction project is functionally operational; (iv) the City has prepared a complete operations and maintenance manual which is available on site; and (v) the City is able to use the product of the construction work to hold, transport and/or treat wastewater in accordance with the project's design.

r.     "United States" shall mean the United States of America, acting on behalf of EPA.

## V. CIVIL PENALTY

9. Within 30 Days after the Effective Date of this Consent Decree, the City shall pay the sum of $340,000.00 as a civil penalty, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. The City shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to the City, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Alaska, Office of the United States Attorney, District of Alaska, 222 West 7th Ave, Rm 253, Anchorage, Alaska 99513. At the time of payment, the City shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. City of Unalaska, and shall reference the civil action number and DOJ case number 90-5-1-1-09888, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

## VI. COMPLIANCE REQUIREMENTS

10. Influent Pump Station Improvement. By December 31, 2012, the City shall achieve Substantial Completion of, and commence operation of the construction project described in Appendix A and hereinafter referred to as the Influent Pump Station Improvement. The City shall comply with all interim compliance milestones and schedules listed in Appendix A.

11. <u>Landfill Leachate Tank.</u>  By September 30, 2013, the City shall achieve Substantial Completion of and commence operation of the construction project described in Appendix B and hereinafter referred to as the Landfill Leachate Tank.  The City shall comply with all interim compliance milestones and schedules listed in Appendix B.  The City shall thereafter operate the Landfill Leachate Tank for the term of this Consent Decree.

12. <u>Chlorination / Dechlorination System.</u>  By December 31, 2014, the City shall achieve Substantial Completion of, and commence operation of the construction project described in Appendix C and hereinafter referred to as the Chlorination/Dechlorination System. The City shall comply with all interim compliance milestones and schedules listed in Appendix C, provided that this requirement does not supersede or modify the applicable effective dates for meeting final effluent limitations established under Paragraphs 14-16 below.  The City shall thereafter operate the Chlorination / Dechlorination System for the term of this Consent Decree.

13. <u>Chemically Enhanced Primary Treatment System ("CEPT").</u>  By December 31, 2015, the City shall achieve Substantial Completion of, and commence operation of the construction project described in Appendix D and hereinafter referred to as the Chemically Enhanced Primary Treatment System ("CEPT").  The City shall comply with all interim compliance milestones and schedules listed in Appendix D, provided that this requirement does not supersede or modify the applicable effective dates for meeting final effluent limitations established under Paragraphs 14-16 below.  The City shall thereafter operate the CEPT system for the term of this Consent Decree.

14. <u>Effluent Limitations.</u>  The City shall comply with the interim effluent limitations set forth in Appendix E for the pollutants listed therein until the dates indicated in Appendix E. Thereafter, the City shall comply with the effluent limitations in its current NPDES Permit or

any modified or subsequent NPDES permit issued by the State or EPA then in effect except that if the Final Fecal Coliform Limits and Final Percent Removal Limits set forth in Paragraphs 15 and 16 below are more stringent than those in the applicable NPDES permit, the City shall comply with the more stringent limits set forth below for the term of this Consent Decree in accordance with the effective dates for those limits set forth below.

15. <u>Final Fecal Coliform Limits.</u> From August 31, 2015 until Termination of this Consent Decree pursuant to Section XVIII, the City shall adhere to the following limits on fecal coliform in its discharges from the Facility ("Final Fecal Coliform Limits"):

Weekly Average:     400 bacteria per 100 milliliter

Monthly Average:    200 bacteria per 100 milliliter

16. <u>Percent Removal Requirement for $BOD_5$ and TSS.</u> From June 30, 2016 until Termination of this Consent Decree pursuant to SectionXVIII, the monthly average effluent loading shall not exceed 70 percent of the monthly average influent loading for five-day biochemical oxygen demand ($BOD_5$) and total suspended solids (TSS) (the "Final Percent Removal Limit").

17. <u>Approval of Deliverables.</u> After review of any plan, report, or other item that is required to be submitted and subject to EPA approval pursuant to this Consent Decree, EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission, and with respect to any disapproval in whole or in part provide the reasons therefore.

18. If the submission is approved pursuant to Paragraph 17, the City shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document. If the submission is conditionally approved

or approved only in part, pursuant to Paragraph 17(b) or 17(c), the City shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to the City's right to dispute only the specified conditions or the disapproved portions under Section X of this Decree (Dispute Resolution).

19.     If the submission is disapproved in whole or in part pursuant to Paragraph 17(c) or 17(d), the City shall, within forty-five (45) Days or such other time as the City and United States agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, the City shall proceed in accordance with the preceding Paragraph.

20.     Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree, shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of the City's obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

21.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require the City to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to the City's right to invoke Dispute Resolution and EPA's right to seek stipulated penalties as provided in the preceding Paragraph.

22.     Permits. Where any compliance obligation under this Section requires the City to

obtain a federal, state, or local permit or approval, the City shall submit timely and complete

applications and take all other actions necessary to obtain all such permits or approvals.

## VII. REPORTING REQUIREMENTS

23.     The City shall submit the following reports:

a.     Within thirty (30) Days after the end of each calendar quarter (i.e., by

April 30, July 30, October 30, and January 30) after the Effective Date of this Consent Decree,

until Termination of this Decree pursuant to Section XVIII, the City shall submit a written report

for the preceding calendar quarter that shall describe the following: i) the status of any

construction requirements or compliance measures; ii) the status of all Consent Decree

milestones; iii) any problems encountered or anticipated, together with the proposed or

implemented solutions; iv) the status of permit applications; v) a summary of operation and

maintenance activities; and vi) a copy of all compliance monitoring reports submitted to the State

during the applicable calendar quarter.

b.     If the City violates or has reason to believe that it may violate, any

requirement of this Consent Decree, the City shall notify EPA of such violation and its likely

duration, in writing, within fifteen (15) Days of the Day the City becomes aware of the violation

or likely violation, with an explanation of the violation's likely cause and of the remedial steps

taken, or to be taken, to prevent, cure or minimize such violation.  The report also shall describe

any violation of the requirements of this Consent Decree and explain the violation's likely cause

and the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause

of a violation cannot be fully explained at the time the report is due, the City shall so state in the

report.  The City shall investigate the cause of the violation and shall then submit an amendment

Case 3:11-cv-00133-HRH   Document 53   Filed 07/03/12   Page 13 of 46

to the report, including a full explanation of the cause of the violation, within forty-five (45) Days of the Day the City becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves the City of its obligation to provide the notice required by Section IX.

24.     Whenever any violation of this Consent Decree or any other event affecting the City's performance under this Decree, may pose an immediate threat to public health, welfare, or the environment, the City shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after the City first became aware of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

25.     All reports shall be submitted to the persons designated in Section XIV.

26.     Each report submitted by the City under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

27.     The reporting requirements of this Consent Decree do not relieve the City of any reporting requirements of the CWA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

28.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII. STIPULATED PENALTIES

29.    The City shall be liable to the United States for stipulated penalties for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure), as a result of Dispute Resolution conducted in accordance with Section X, or otherwise reduced or waived to Paragraph 39 herein. A violation includes failing to perform any obligation required by this Consent Decree, according to all applicable requirements and within the specified time schedules established by or approved under this Decree.

30.    If the City fails to pay the civil penalty required to be paid under Section V (Civil Penalty) of this Decree when due, the City shall pay a stipulated penalty of $1000 per day for each day that the payment is late.   Payment of the Stipulated Penalty for late payment of the civil penalty shall be made in accordance with Paragraph 9. All transmittal correspondence shall state that such payment is the Stipulated Penalty for late payment, as applicable, and shall include the information set forth in Paragraph 9. This Stipulated Penalty is in addition to the Interest due on the Civil Penalty as required by Paragraph 9.

31.    Construction Projects.

a.    Substantial Completion Requirement. The following stipulated penalties shall accrue per violation per Day for violation of a Substantial Completion deadline for each construction project as set forth in Paragraphs 10-13:

| Period of Delay or Non-compliance | Penalty Per Day |
|---|---|
| 1st through 14th day | $750 |
| 15th through 30th Day | $1000 |
| 31st Day and beyond | $1500 |

b.      Interim Compliance Milestones.  The following stipulated penalties shall accrue per violation per Day for each violation of an interim compliance milestone for a construction project as set forth in Appendices A, B, C and D:

| Period of Delay or Non-compliance | Penalty Per Day |
|---|---|
| 1st through 14th day | $500 |
| 15th through 30th Day | $750 |
| 31st Day and beyond | $1000 |

32.      Violation of Interim Effluent Limits.  The following stipulated penalties shall accrue per violation per Day for each violation of an interim effluent limitation set forth in Appendix E:

a.      Penalty Per Violation of Interim Daily Maximum Limits set forth in Appendix E for Total Residual Chlorine, Aqueous Hydrocarbons, Aromatic Hydrocarbons, $BOD_5$ Concentration, TSS Concentration, and TSS Mass:

| Number of Days Violation | Stipulated Penalties |
|---|---|
| 1-30 | $300 |
| 31-60 | $750 |
| > 60 | $1250 |

b.      Penalty Per Violation of the Interim Weekly Average Limit set forth in Appendix E for Fecal Coliform:  $300 per week.

c.      Penalty Per Violation of Interim Monthly Average Limits set forth in Appendix E for Fecal Coliform, Total Residual Chlorine, $BOD_5$ Concentration, TSS Concentration, and TSS Mass: $800 per month

d.      Penalty Per Violation of Interim Daily Maximum Limits set forth in

Appendix E for $BOD_5$ Mass and Flow:

| Number of Days Violation | Stipulated Penalties |
|---|---|
| 1-30 | $300 |
| 31-60 | $500 |
| > 60 | $750 |

e.      Penalty Per Violation of Interim Monthly Average Limits set forth in

Appendix E for $BOD_5$ Mass and Flow: $700 per month

f.      Penalty Per Violation of Interim Monthly Average $BOD_5$ and TSS Final

Percent Removal Requirements set forth in Appendix E:  $800 per month

33.      <u>Violation of NPDES Permit Effluent Limits or Unauthorized Discharges.</u>

a.      Penalty Per Discharge of Unauthorized Pollutants not disclosed in the

NPDES permit application submitted by the City to EPA on October 9, 2001 for the current

NPDES Permit, or in the application for subsequent NPDES permit issued by EPA or ADEC that

becomes effective:

| Number of Days Violation | Stipulated Penalties |
|---|---|
| 1-30 | $750 |
| 31-60 | $1500 |
| Over 61 Days | $2000 |

b.      Penalty Per Violation of  the Daily Maximum Limits for Aqueous

Hydrocarbons, Aromatic Hydrocarbons, Total Residual Chlorine, $BOD_5$ Concentration, TSS

Mass and TSS Concentration in the NPDES Permit or in any modified or subsequent NPDES

Permit issued by EPA or ADEC that becomes effective:

| Number of Days Violation | Stipulated Penalties |
|---|---|
| 1-30 | $1000 |
| 31-60 | $1750 |
| > 60 | $3000 |

   c.  Penalty Per Violation of the Monthly Average Limits for $BOD_5$ Concentration, Total Residual Chlorine, TSS Mass and TSS Concentration in the NPDES Permit or any modified or subsequent NPDES Permit issued by EPA or ADEC that becomes effective: $2000 per month.

   d.  Penalty Per Violation of the Daily Maximum Limits for $BOD_5$ Mass and Flow in the NPDES Permit or any modified or subsequent NPDES Permit issued by EPA or ADEC that becomes effective:

| Number of Days Violation | Stipulated Penalties |
|---|---|
| 1-30 | $300 |
| 31-60 | $600 |
| > 60 | $1200 |

   e.  Penalty Per Violation of the Monthly Average Limits for $BOD_5$ Mass and Flow in the NPDES Permit or any modified or subsequent NPDES Permit issued by EPA or ADEC that becomes effective: $600 per month

   f.  Penalty Per Violation of Monthly Average $BOD_5$ and TSS Final Percent Removal Requirements in Paragraph 16:  $2500 per month.

   g.  Penalty Per Violation of the Final Fecal Coliform Weekly Average Limit set forth in Paragraph 15:  $ 1000 per week.

   h.  Penalty Per Violation of the Final Fecal Coliform Monthly Average Limit set forth in Paragraph 15:  $2500 per month

34. The following stipulated penalties per Day shall accrue for each violation of any requirement in the NPDES Permit or in any modified or subsequent NPDES Permit issued by EPA or ADEC that becomes effective other than effluent limit exceedances or discharges of a pollutant not authorized by the permit:

| Period of Delay or Non-compliance | Penalty Per Day |
| --- | --- |
| 1st through 14th day | $350 |
| 15th through 30th Day | $800 |
| 31st Day and beyond | $1250 |

35. <u>Violation of Reporting Requirements.</u> The following stipulated penalties per Day shall accrue for each violation of the reporting requirements of Section VII (including the failure to submit any required progress reports below), plans, or other deliverables:

| Period of Delay or Non-compliance | Penalty Per Day |
| --- | --- |
| 1st through 14th day | $250 |
| 15th through 30th Day | $500 |
| 31st Day and beyond | $1000 |

36. Violation of any other requirement of this Consent Decree not specified in Paragraphs 31-35 above.

| Period of Delay or Non-compliance | Penalty Per Day |
| --- | --- |
| 1st through 14th day | $350 |
| 15th through 30th Day | $800 |
| 31st Day and beyond | $1250 |

37. Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

38. The City shall pay stipulated penalties to the United States within forty-five (45) Days of receipt by the City of a written demand by the United States.

39. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

40. Stipulated penalties shall continue to accrue during any period of Dispute Resolution, but need not be paid until the following:

   a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, the City shall pay accrued penalties determined to be owing, together with interest, within forty-five (45) Days of the effective date of the agreement or the receipt of EPA's decision or order.

   b. If the dispute is appealed to the Court and the United States prevails in whole or in part, the City shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below, provided however, that stipulated penalties shall not accrue during the time period between 180 days from the date the dispute is fully briefed before the Court under Paragraph 53 and the date the Court issues a decision on the dispute.

   c. If any Party appeals the District Court's decision, the City shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision, provided however, that stipulated penalties shall not accrue during the time period between 270 days from the date the dispute is fully briefed before the Court of Appeals and the date the Court issues a decision on the dispute.

41. The City shall pay stipulated penalties owing to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to the City, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Alaska, District of Alaska, 222

West 7th Ave, Rm 253, Anchorage, Alaska 99513. At the time of payment, the City shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for stipulated penalties owed pursuant to the Consent Decree in United States v. City of Unalaska, shall state the violations for which the stipulated penalties are due, and shall reference the civil action number and DOJ case number 90-5-1-1-09888, to the United States in accordance with Section XIV by email to acctsreceivable.CINWD @epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

If the City fails to pay stipulated penalties according to the terms of this Consent Decree, the City shall be liable for interest on such penalties, as provided for in 28 U.S.C. §1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for the City's failure to pay any stipulated penalties.

42. The payment of stipulated penalties as set forth above shall not alter in any way the City's obligation to complete the performance of all activities required under this Consent Decree. The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for the City's violation of this Consent Decree or applicable law. The City expressly reserves any and all legal and equitable defenses that may be available to it with respect to such claims. Where a violation of this Consent Decree is also a violation of the CWA, the City shall be allowed a credit for any stipulated penalties paid against any statutory penalties imposed for such violation.

---

## IX.  FORCE MAJEURE

43.  "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the City, any entity controlled by the City, or the City's contractors that delays or prevents the timely performance of any obligation under this Consent Decree despite the City's best efforts to fulfill the obligation.  The requirement that the City exercise "best efforts to fulfill the obligation " includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event:  i) as it is occurring, and ii) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include the City's financial inability to perform any obligation under this Consent Decree or any delay in performance due to the City's failure to obtain, or delay in obtaining, any state or local permits.  However, Force Majeure shall include any delay in the performance of any obligation resulting from the City's failure to obtain, or a delay in obtaining, any federally issued permit or approval required to fulfill such obligation, if the City has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

44.  If any event occurs or has occurred that may delay or prevent the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, the City shall provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when the City first became aware that the event might cause a delay or non-compliance, with a copy sent by overnight mail or by certified or registered mail, return receipt requested  Within seven (7) days thereafter, the City shall provide in writing to EPA:  an explanation and description of the reasons for the delay or non-compliance; the anticipated duration of the delay or non-compliance; all actions taken or to be taken to prevent or minimize the delay or non-

compliance; a schedule for implementing any measures to be taken to prevent or mitigate the delay or the effect of the delay or non-compliance; the City's rationale for attributing such delay or non-compliance to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the City, such event may cause or contribute to an endangerment to public health, welfare, or the environment. The City shall include with any notice all available documentation supporting the claim that the delay or non-compliance was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude the City from asserting a Force Majeure claim for that particular event. The City shall be deemed to have knowledge of any circumstances that the City, any entity controlled by the City, or the City's contractors knew or should have anticipated.

45.     If EPA agrees that the delay or non-compliance or anticipated delay or non-compliance is attributable to a Force Majeure event, the time for performing the affected Consent Decree obligations will be extended by EPA for such time as is necessary to complete those obligations and no stipulated penalties shall be due for the extension period. Such an extension shall not, of itself, extend the time for performing any other obligation. EPA will notify the City in writing of the length of the extension, if any.

46.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify the City in writing of its decision.

47.     If the City elects to invoke the dispute resolution procedures set forth in Section X, it shall do so by sending the United States a written Notice of Dispute no later than fifteen (15) days after receipt of EPA's notice sent pursuant to Paragraph 46 above. In any such proceeding, the City shall have the burden of demonstrating by a preponderance of the evidence that the non-compliance, delay or anticipated delay or non-compliance has been or will be

caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the City complied with the requirements of Paragraphs 43-44. If the City carries this burden, the delay at issue shall be deemed not to be a violation by the City of the affected obligation(s) of this Consent Decree.

## X. DISPUTE RESOLUTION

48.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The City's failure to seek dispute resolution under this Section shall preclude the City from raising any disputed issue as a defense to an action by the United States to enforce this Consent Decree.

49.     Informal Dispute Resolution. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the City sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement of the City and United States. If the City and the United States cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, the City invokes the formal dispute resolution procedures set forth below.

50.     Formal Dispute Resolution. The City shall invoke formal dispute resolution procedures within the time period provided in the preceding Paragraph by serving on the United

States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any supporting factual data, analysis, opinion, or documentation relied upon by the City.

51.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of the City's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any supporting factual data, analysis, opinion, or documentation relied upon by the United States. The United States' Statement of Position shall be binding on the City, unless the City files a motion for judicial review of the dispute in accordance with the following Paragraph.

52.     The City may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV, a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall include a written statement of the City's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

53.     The United States shall respond to the City's motion within the time period allowed by the Local Rules of this Court. The City may file a reply memorandum, to the extent permitted by the Local Rules.

54.     Standard of Review.

        a.     Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under this Section X

pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules, or any other items requiring approval by EPA under this Consent Decree, the adequacy of the performance of work undertaken pursuant to this Consent Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the City shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.  Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under this Section X, the City shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objective of the Consent Decree.

55.  The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of non-compliance, but payment shall be stayed pending resolution of the dispute as provided in Section XII.  If the City does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII.

## XI.  INFORMATION COLLECTION AND RETENTION

56.  The United States, and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility at all reasonable times, upon presentation of credentials, to:

a.  monitor the progress of obligations required under this Consent Decree;

Case 3:11-cv-00133-HRH   Document 53   Filed 07/03/12   Page 26 of 46

b.      verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree or NPDES Permit;

c.      obtain samples and, upon request, splits of any samples taken by the City or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess the City's compliance with this Consent Decree and NPDES Permit.

57.     Upon request, the City shall provide EPA or its authorized representatives splits of any samples taken by the City provided such samples are available at the time of the request.

58.     Until three (3) years after Termination of this Consent Decree, the City shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, that relate in any manner to the City's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, the City shall provide copies of any documents, records, or other information required to be maintained under this Paragraph. At the conclusion of the information-retention period provided in this Paragraph, the City shall notify the United States at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of this Paragraph and, upon request by the United States, the City shall deliver any such documents, records, or other information to EPA. The City may assert that certain documents, records, or

other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If the City asserts such a privilege, it shall provide the following: i) the title of the document, record, or information; ii) the date of the document, record, or information; iii) the name and title of each author of the document, record, or information; iv) the name and title of each addressee and recipient of the document, record, or information; v) a description of the subject of the document, record, or information; and vi) the privilege asserted by the City. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

59.     The City may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that the City seeks to protect as CBI, the City shall follow the procedures set forth in 40 C.F.R. Part 2.

60.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the City to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

61.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

62.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 61. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or

injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly stated in Paragraph 61. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility, whether related to the violations addressed in this Consent Decree or otherwise.

63.     This Consent Decree does not limit or affect the rights of the City or of the United States or the State against any third parties not party to this Consent Decree, nor does it limit the rights of third parties not party to this Consent Decree against the City, except as otherwise provided by law and Paragraph 61 herein.

64.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to the Facility, the City shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 61 of this Section.

65.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. The City is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits, and the City's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any

manner that the City's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. §1251, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

66.     The City and State hereby acknowledge: (1) that a future NPDES permit issued for the City's Facility may require treatment methods or upgrades to the Facility beyond the construction projects required by this Consent Decree; (2) that such treatment methods or upgrades may require the dismantling, replacement or upgrading of the construction projects implemented under this Consent Decree; and (3) that this Consent Decree provides no basis, evidence, or defense regarding the determination of the appropriate treatment methods and effluent limitations that may be imposed by future NPDES permits.

67.     This Consent Decree is not a waiver or limitation of any right of the City to contest any provision of any future NPDES permit issued for the Facility. The City reserves all rights under applicable state and federal law to contest or appeal any provision of any future NPDES permit for the Facility.

68.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

69.     The Complaint and this Consent Decree shall constitute and establish diligent prosecution by the United States under Section 505(b)(1)(B) of the CWA, 33 U.S.C. § 1365(b)(1)(B) and any other applicable federal or state law, of all matters alleged in the Complaint.

## XIII.  COSTS

70.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the City.

## XIV. NOTICES

71.     Notifications, communications and submissions shall be sent to the addressees listed below by U.S. Mail, postage pre-paid, or private courier service, except for notices under Section IX (Force Majeure) and Section X (Dispute Resolution), which shall be sent by overnight mail or by certified or registered mail, return receipt requested.  If the date on which a notification or other communication is due falls on a Saturday, Sunday or legal holiday, the deadline for such submission shall be enlarged to the next business day.  Where this Consent Decree requires that notices and submissions are to be made to the United States they shall be made to the United States Department of Justice and all of the designated EPA offices set forth below.  Where this Consent Decree requires that notices and submissions shall be made to EPA, they need only be sent to the designated EPA offices set forth below.

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, DC 20044-7611
Re: DOJ No. 90-5-1-1-09888

Director of Water Enforcement
U.S. Environmental Protection Agency
USEPA Ariel Rios Building (AR)
1200 Pennsylvania Avenue N.W.
Washington, DC 20004

Director, Office of Compliance and Enforcement
U.S. Environmental Protection Agency
1200 Sixth Avenue, Suite 900, OCE-164
Seattle, WA 98101

---

United States v. City of Unalaska Consent Decree                                    Page - 28 -

**To the State:**

Director, Division of Water
Alaska Department of Environmental Conservation
555 Cordova St.
Anchorage, AK 99501-2617

**To the City:**

Chris Hladick
City Manager
City of Unalaska
P.O. Box 610
Unalaska, AK 99685

With a copy to:

Brooks W. Chandler
Boyd, Chandler & Falconer
911 W. 8th Ave.
Suite 302
Anchorage, AK 99501

72.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

73.     Notices submitted pursuant to this Section shall be deemed submitted upon the

day they are postmarked and sent by first class mail, overnight mail, or certified mail return

receipt requested, unless otherwise provided in this Consent Decree or by mutual agreement of

the Parties in writing.

## XV.  EFFECTIVE DATE

74.     The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket.

---

## XVI. RETENTION OF JURISDICTION

75.     The Court shall retain jurisdiction over this case until termination of this Consent Decree for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

76.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

77.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section X; provided, however, that instead of the burden of proof provided by Paragraph 54, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with the grounds for relief specified in Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

78.     After the City has completed the requirements of Paragraphs 10-13, and has for five years thereafter maintained substantial compliance with all other provisions in this Consent Decree, including but not limited to the Final Fecal Coliform Limit in Paragraph 15, and the Final Percent Removal Limit set forth in Paragraph 16 after the effective dates of said limits, and the NPDES Permit or any subsequent NPDES permit issued by ADEC or EPA, and has paid the Civil Penalty, associated interest and any accrued stipulated penalties as required by this Consent

---

Decree, the City may serve upon the United States a Request for Termination, together with all necessary supporting documentation, stating that the City has satisfied those requirements.

79.     Following receipt by the United States of the City's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the City has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

80.     If the United States, does not agree that the Consent Decree may be terminated, the City may invoke Dispute Resolution under Section X. However, the City shall not seek Dispute Resolution of any dispute regarding termination until sixty (60) days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

81.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. The City consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the City in writing that it no longer supports entry of the Decree.

## XX. SIGNATORIES/SERVICE

82.     Each undersigned representative of the City, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice

---

certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

83. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XXI. INTEGRATION

84. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII. APPENDICES

85. The following appendices are attached to and are part of this Consent Decree:

    Appendix A:  Influent Pump Station Improvements
    Appendix B:  Landfill Leachate Tank
    Appendix C:  Chlorination/Dechlorination System
    Appendix D:  Chemically Enhanced Primary Treatment System
    Appendix E:  Interim Emissions/Effluent Limits

## XXIII. FINAL JUDGMENT

86. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and the City.

Dated and entered this ___3rd___ day of ___July___, 2012.

/s/H. Russel Holland
UNITED STATES DISTRICT JUDGE
District of Alaska

**FOR PLAINTIFF THE UNITED STATES OF AMERICA:**

*[signature]*              5/4/12
IGNACIA S. MORENO             DATE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


*[signature]*              5/10/12
ELIZABETH LOEB             DATE
SARA COLANGELO
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8916
Elizabeth.loeb@usdoj.gov

KAREN L. LOEFFLER
United States Attorney
District of Alaska

Kevin Feldis
Office of the United States Attorney
District of Alaska
222 West 7th Ave, Rm 253,
Anchorage, Alaska 99513
(907) 271-5071
Kevin.Feldis@usdoj.govDistrict of New Hampshire

---

_(signature)_
PAM MAZAKAS
Acting Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

_(date)_ 4/18/12
DATE

_(signature)_
MARK POLLINS
Director
Water Enforcement Division
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

_(date)_ 4/18/12
DATE

_(signature)_
LOREN DENTON
Municipal Branch Chief
Water Enforcement Division
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

_(date)_ 4/18/12
DATE

_(signature)_
CLARKE THURMON
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

_(date)_ April 18, 2012
DATE

Of Counsel:

Kimberly Owens, Esq.
EPA Region 10

**FOR DEFENDANT THE STATE OF ALASKA**

_Michelle Bonnet_      Date: _3-2-2012_
MICHELLE BONNET
Director, Division of Water
Alaska Department of Environmental Conservation
555 Cordova St.
Anchorage, AK 99501-2617

_signature_      Date: _3-6-2012_
CAMERON LEONARD
Senior Assistant Attorney General
Office of the Attorney General
100 Cushman St., Ste. 400
Fairbanks, AK 99701
Phone: (907) 451-2811
Fax:  (907) 451-2985
Cam.leonard@alaska.gov
Alaska Bar No. 8406036
Attorney for State of Alaska

---

**FOR DEFENDANT THE CITY OF UNALASKA, ALASKA**

By: _____  Date: March 1, 2012
    Chris Hladick
    City Manager

   Pursuant to vote of the City Council
   of February 28, 2012.

# APPENDIX A

## WWTP Influent Pump Station Improvements

1.     <u>Project Description</u>

Interim Improvements at the existing WWTP influent pump station are described in detail in the City of Unalaska's Influent Pump Station Analysis dated January 4, 2012. This project includes replacing existing constant speed motor drives with either one or two variable speed motor drives and associated control modifications. Whether one or two variable speed motor drives are installed is at the City's option but at least one variable motor speed drive will be installed.

2.     <u>Substantial Completion Date</u>

The City shall achieve Substantial Completion and commence operation of the Influent Pump Station Improvements by December 31, 2012.

3.     <u>Interim Compliance Milestones</u>

    a.   The City shall submit all documents required to request approval to construct the Influent Pump Station to the State for review by June 1, 2012.

    b.   Upon completion of construction, the City shall submit all documents required to request approval to operate the Influent Pump Station to the State by November 15, 2012.

**APPENDIX B**

**<u>Landfill Leachate Tank</u>**

1.     <u>Project Description</u>

The City shall construct and operate the Landfill Leachate Tank described in the City of Unalaska's Final Facilities Plan dated October 12, 2011, Appendix J. This project includes constructing a storage tank into which landfill leachate will be pumped and aerated before discharge into the sanitary sewer collection system.

2.     <u>Substantial Completion Date</u>

The City shall achieve Substantial Completion of and commence operation of the Landfill Leachate Tank by December 31, 2013.

3.     <u>Interim Compliance Milestones</u>

    a.   The City shall have complete plans signed and sealed by an Alaska registered Professional Engineer by April 1, 2013.

    b.   The City shall issue a Notice to Proceed to construct the Landfill Leachate Tank by June 1, 2013.

# APPENDIX C

## Chlorination/Dechlorination System

1.   Project Description

        The City shall construct and operate the Chlorination/Dechlorination system described in the City of Unalaska's Final Facilities Plan dated October 12. This system includes chlorine contact tanks, a dechlorination system and related chemical feed equipment. The chlorine contact tanks will have solids removal equipment that will function until the new CEPT facilities become operational. A temporary pump station will be constructed to convey screened wastewater from the existing wastewater treatment building to the new chlorine contact tanks.

2.   Substantial Completion Date

The City shall achieve Substantial Completion of, and commence operation of the Chlorination/Dechlorination System  by December 31, 2014.

3.   Interim Compliance Milestones

a.   The City shall submit  all documents required to request approval to construct the Chlorination/Dechlorination system  to the State by December 31, 2013.

b.   The City shall issue a Notice to Proceed to construct the Chlorination/Dechlorination system by May 1, 2014.

c.   Upon completion of construction, the City shall submit  all documents required to request approval to operate the Chlorination/Dechlorination system to the State by November 15, 2014.

**APPENDIX D**

**Chemically Enhanced Primary Treatment WWTP Improvement (CEPT)**

1.    Project Description

The City shall construct and operate the CEPT wastewater treatment plant improvements described in the City of Unalaska's Final Facilities Plan dated October 12, 2011. The CEPT facilities include new head works with screens, chemical addition and flocculation basins, sedimentation tanks and solids processing and handling facilities. The solids processing and handling facilities include a sludge holding tank, sludge dewatering and drying equipment. Related electrical equipment upgrades include a new emergency power generator.

2.    Substantial Completion Date

The City shall achieve Substantial Completion of and commence operation of the CEPT System by December 31, 2015.

3.    Interim Compliance Milestones

a.    The City shall submit all documents required to request approval to construct the CEPT to the State for review by December 31, 2013:

b.    The City shall issue a Notice to Proceed to construct the CEPT by May 1, 2014.

c.    Upon completion of construction, the City shall submit all documents required to request approval to operate the CEPT to the State by November 15, 2015.

# APPENDIX E

**APPLICABLE INTERIM EFFLUENT LIMITS**

| Pollutant and Parameter | Interim Limit | Beginning Date for Interim Limit | End Date for Interim Limit |
|---|---|---|---|
| Flow Daily Maximum | 1.44 mgd | Effective Date | 6/30/16 |
| Flow Monthly Average | 0.62 mgd | Effective Date | 6/30/16 |
| Fecal Coliform Daily Maximum | 182,000 MPN/100ml | Effective Date | 8/31/15 |
| Fecal Coliform Monthly Average | 31,674 MPN/100ml | Effective Date | 8/31/15 |
| Total Residual Chlorine Daily Maximum | 0.58 mg/L | Effective Date | 8/31/15 |
| Total Residual Chlorine Monthly Average | 0.23 mg/L | Effective Date | 8/31/15 |
| Aqueous Hydrocarbons Daily Maximum | 18 ug/L | Effective Date | 12/31/15 |
| Aromatic Hydrocarbons Daily Maximum | 61 ug/L | Effective Date | 12/31/15 |
| BOD Mass Daily Maximum | 1,922 ppd | Effective Date | 6/30/16 |
| TSS Mass Daily Maximum | 2,252 ppd | Effective Date | 6/30/16 |
| BOD Mass Monthly Average | 1,376 ppd | Effective Date | 6/30/16 |
| TSS Mass Monthly Average | 1,001 ppd | Effective Date | 6/30/16 |
| BOD Concentration Daily Maximum | 413 mg/L | Effective Date | 6/30/16 |
| TSS Concentration Daily Maximum | 300 mg/L | Effective Date | 6/30/16 |
| BOD Concentration Monthly Average | 275 mg/L | Effective Date | 6/30/16 |
| TSS Concentration Monthly Average | 200 mg/L | Effective Date | 6/30/16 |